UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROXANNE NUNEZ,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No.  2:24-cv-03141-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to magistrate judge jurisdiction for all purposes, including entry of judgment.  (ECF No. 6.) For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, remand for further proceedings, and deny the Commissioner's motion for summary judgment.

////

////

////

////

1

BACKGROUND

Plaintiff, born in 1980, applied for DIB[1] on November 18, 2020, alleging disability beginning November 9, 2018.  Administrative Transcript ("AT") 99.  Plaintiff alleged she was unable to work due to fibromyalgia, bodily pain, memory loss, ADHD, chronic fatigue syndrome, PTSD, anxiety, and panic attacks.  AT 47.  On December 5, 2023, the ALJ issued a decision finding plaintiff not disabled.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2.  The claimant has not engaged in substantial gainful activity since November 9, 2018, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: history of alcohol abuse with Cirrhosis; opiate use disorder; chronic pain syndrome; depression, posttraumatic stress disorder; and attention deficit hyperactivity disorder ("ADHD").
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except the claimant can never have exposure to hazards such as unprotected heights, heavy machinery, or driving commercially; can never climb ladders, ropes, and scaffolds; can perform unskilled, repetitive, simple, and routine work only; and can never perform fast-paced production line work.
>
> 6.  The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born [in 1980] and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8.  The claimant has at least a high-school education.
>
> 9.  Transferability of job skills is not material to the determination of disability[.]
>
> 10.  Considering the claimant's age, education, work experience, and

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2]

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 9, 2018, through the date of this decision.

AT 101-116.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1)  the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective symptom testimony; and (2) the ALJ erred in evaluating the medical opinions of two treating physicians and two reviewing psychological consultants.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

---

[2] Relying on vocational expert (VE) testimony, the ALJ found that plaintiff could perform jobs such as housecleaner, price marker, and mail sorter.  AT 116.

administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A.  Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting her testimony as to mental and physical limitations, including "detailed symptom testimony specific to her well-documented, longstanding diagnosis of fibromyalgia."  (ECF No. 11 at 11.)

1.  Plaintiff's Testimony

The ALJ summarized plaintiff's hearing testimony and January 2022 function report at length.  AT 107-108.  Plaintiff stated, in part, that she had

> difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others.  The claimant reported that she could walk a block or half a block [and] that her ability to concentrate was sporadic. [She] stated that at times she could not leave her bed for four or five days at a time.

AT 107, citing AT 310-320.  At the October 2023 hearing, plaintiff testified that she worked at Lowe's up to eight hours a week with "a lot of breaks."  AT 18-19.  She stated that she could stand for 10-15 minutes and used a bench at the register at work.  AT 28.  Plaintiff testified that she could go up and down the stairs in her home.  AT 29.  She testified that she took multiple medications (AT 31) and had anxiety, depression, and memory problems.  AT 34.  She stated that she had been using a cane since 2020 but it had not been prescribed by a doctor, and that she used a chair in the shower.  AT 35-36.  Plaintiff testified that she had a "good day" about every two months, and on those days, she made jewelry for about an hour.  AT 37-38.

2.  The ALJ's Decision

At step two, the ALJ noted that plaintiff was diagnosed with fibromyalgia and chronic pain syndrome in July 2020.  AT 104.  The ALJ concluded that fibromyalgia was a non-medically determinable impairment according to the Soc. Sec. Rul. 12-2-p criteria.  AT 103-104.  However,

the ALJ found chronic pain syndrome to be a severe impairment and explained that she "considered the claimant's pain complaints including those made related to fibromyalgia . . . in regard to chronic pain syndrome."  AT 102, 104.

After summarizing plaintiff's self-reports and testimony, the ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AT 109.

"First," the ALJ wrote, "in regards to complaints such as fatigue, dizziness, difficulty sleeping, pain, chronic pain syndrome, or trouble concentrating," the record showed that plaintiff was "consistently and across providers" described as "awake and alert."  AT 109.  As to pain, the ALJ cited evidence that plaintiff's pain medications "generally . . . work[ed]" in controlling her pain.  AT 109 (record citations omitted).  Similarly, the ALJ cited evidence that plaintiff's fatigue was "well managed" with medication.  AT 109; AT 111 ("the treatment record generally showed the claimant's pain responded to medication.").  Nonetheless, taking plaintiff's pain into account, the ALJ limited her to simple work at the light exertional level.  AT 109.

As to plaintiff's claimed "problems walking, sitting, and standing . . . or having postural limitations," the ALJ noted that "the record consistently and across providers shows normal gait" and that, at a March 2022 exam, plaintiff "got on and off the examination table [and took her shoes off] without difficulty[.]"  AT 109.  The ALJ concluded that plaintiff could perform the standing, walking, and other physical requirements of light work.  AT 109; see also AT 110 (finding plaintiff physically capable of light work), AT 111 (noting plaintiff held part-time job requiring interacting with the public, walking, and standing).

As to plaintiff's claimed problems with memory and concentration, the ALJ cited evidence of "fairly unremarkable" mental exams and evidence that, in 2021, plaintiff's inattention was "adequately addressed" with medication.  AT 110-111.  The ALJ also noted that plaintiff declined therapy in December 2021.  AT 111.  The ALJ concluded that plaintiff's mild and moderate mental impairments limited her to "repetitive and routine type work that is not performed in a fast paced production environment."  AT 110.

As to plaintiff's claimed problems with mood and affect, the ALJ again noted mild

psychological exam findings and evidence that plaintiff was appropriately groomed, calm, and cooperative with medical providers. AT 110 (record citations provided). The ALJ concluded that the evidence supported a limitation to occasional interaction with others. AT 111.

### 3. Legal Standard

#### a. Two-step credibility determination

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).

////

b.  Fibromyalgia

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" Id. (quoting Benecke, 379 F.3d at 590).  Social Security Ruling ("SSR") 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p).

The Ninth Circuit has held that "after a claimant has established a diagnosis of fibromyalgia," the ALJ should "consider a longitudinal record whenever possible." Revels, 874 F.3d at 657; see also Franchino v. Kijakazi, 2022 WL 16548014, *1 (9th Cir. Oct. 31, 2022) (unpublished).  Moreover, "the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods[.]" Revels, 874 F.3d at 662; see also Franchino, 2022 WL 16548014, *2.  It is not uncommon that individuals with fibromyalgia have "muscle strength, sensory functions, and reflexes [that] are normal." Id. at 656 (cleaned up).  However, where a claimant's "statements . . . contradict the medical record or are inconsistent with her actions[,]" this can "detract from her credibility" even with a fibromyalgia diagnosis. Franchino, 2022 WL 16548014, *2.

4.  Analysis

As noted above, the ALJ found plaintiff's diagnosed fibromyalgia to be non-severe. However, the ALJ considered plaintiff's subjective complaints of pain in the context of severe chronic pain syndrome and ultimately limited plaintiff to simple work at the light level due to pain.  AT 109.

In evaluating credibility, the ALJ considered plaintiff's numerous claimed symptoms as to pain, fatigue, mobility, mental symptoms, and mood symptoms based on the longitudinal record of treatment, as required with a fibromyalgia diagnosis.  However, having found plaintiff's fibromyalgia nonsevere, the ALJ applied the standard two-part analysis and found plaintiff's

multiple symptom allegations somewhat inconsistent with the medical record which contains numerous unremarkable physical and mental findings during the period of alleged disability. The ALJ also considered that plaintiff was capable of working part-time in a public facing role, had good results with medications for her symptoms[3], and at times opted to discontinue psychotropic medications or start therapy. AT 111. Plaintiff contends that her fibromyalgia should have factored more into the ALJ's credibility analysis; however, she has not shown error on this basis. As the ALJ used the proper process and provided proper reasons, the court defers to the ALJ's credibility analysis.

### B. Medical Opinions

Plaintiff argues that she has disabling pain, fibromyalgia, chronic dysfunction, and severe mental impairment. She challenges the ALJ's assessment of the following medical opinions: (1) the opinions of her primary care physician, Dr. Galang; (2) the opinions of treating psychiatrist Dr. Correia; and (3) the opinions of state agency reviewing consultants Dr. Bergmann-Harms and Dr. Barsukov.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20

---

[3] See, e.g., AT 423 (2021 note that oxycodone "controlled her pain extremely well"), 916 (2021 note that plaintiff's mental symptoms were "reasonably well addressed" off medication), 1011 (2023 note that medication was "controlling her pain" with no side effects), 1032 (2022 medical note that plaintiff was "stable" on oxycodone with no side effects); 1062 (2023 note that mental symptoms were "well addressed" on medication).

C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations.  20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court."  Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

1.  Dr. Galang

Dr. Gerardo Galang was plaintiff's primary care provider between 2019 and 2023.  The ALJ evaluated two of his opinions in the record, one in August 2021 and the other in September 2023. The ALJ summarized these opinions as follows:

> [Dr. Galang opined in August 2021] that the claimant could lift ten pounds occasionally, stand and walk for two hours of an eight-hour workday, and sit for less than six hours of an eight-hour workday. Dr. Galang indicated that the claimant was limited in all manipulative activities.  [He] cited to chronic pain, fibromyalgia, and pain medications.

AT 111, citing AT 1004-1010.

In September 2023, in a second form questionnaire, Dr. Galang indicated more severe limitations.  Dr. Galang opined that plaintiff could sit for two hours total and stand and walk less than two hours of an eight-hour workday; would require five to six unscheduled breaks per day that would last for hours; and could rarely perform manipulative tasks and lift less than ten

pounds.  Dr. Galang opined that plaintiff would have bad days and be absent more than five days a month, off-task more than fifty percent of the time, and unable to do any physical work due to fibromyalgia flares.  AT 112-13, citing AT 1089-1092.  Summarizing this opinion, the ALJ noted:

> Dr. Galang cited to joint and back pain, on-and-off headaches, numbness, and tingling of the extremities.  [He] cited to bilateral tenderness and limited range of motion.  Dr. Galang stated that the claimant had a poor prognosis.

AT 112[4], citing 1089-1092.

The ALJ wrote that she did not find Dr. Galang's opinions persuasive for the following reasons:

> First, the first form questionnaire was not supported by citations to objective evidence.  The second form cited to bilateral tenderness and limited range of motion, but this is not consistent with the evidence or supported by Dr. Galang's own treatment notes.  Dr. Galang's examinations were consistently unremarkable including describing the claimant as awake and alert and not showing abnormalities of the extremities [record citations omitted].  The claimant being awake and alert and no mention of concentration difficulty does not support she would be off task.  Consistently normal examinations are not consistent with bad days that would cause absenteeism.  Normal examinations of the extremities do not support the extreme limitations Dr. Galang opined to.  The evidence also did not show reduced range of motion . . . consistent with manipulative limitations.  Moreover, the claimant had normal gait, walked without assistance, got off the examination table without difficulty, and took her shoes off without difficulty.  The claimant had no tenderness in the back or knee.  This is not consistent with the extreme limitations Dr. Galang opined to.

AT 112.

The ALJ found that the 2021 opinion was not supported by citations to objective evidence and the 2023 opinion was not supported by Dr. Galang's treatment notes, including many normal examinations.  AT 112.  The ALJ cited multiple exam findings that plaintiff was "awake and alert and not showing abnormalities of the extremities."  AT 112.  The also ALJ considered whether the opinion was consistent with evidence from other medical sources, including plaintiff's 2022

---

[4] The ALJ noted that, later in September 2023, Dr. Galang wrote a letter finding plaintiff unable to work.  AT 112, citing AT 1093.  As this letter went to the ultimate issue of disability, reserved for the ALJ, the ALJ did not analyze it as a medical opinion.  AT 112.

consultative examination with Dr. Shalid Ali, who found plaintiff to have a mostly normal range of motion and noted that she could get on and off the exam table without difficulty. AT 112, citing AT 660-665.

Plaintiff argues that the ALJ "relied on select evidence in the record" and did not address Dr. Galang's consistent documentation of plaintiff's chronic ongoing pain. However, the ALJ adequately considered the factors of supportability and consistency with respect to Dr. Galang's opinions, which largely concerned plaintiff's physical abilities, and the court finds no error on this basis.

2. Dr. Correia

Dr. Maisha Correia saw plaintiff for psychiatric care every 2-4 months between 2020 and 2023. See AT 887, 1088. She completed two mental disorder questionnaire forms, one in June 2022 (AT 883-887) and one in September 2023 (AT 1088-1102), which she updated one month later (AT 1098-1102).

In her June 2022 opinion, Dr. Correia noted that plaintiff frequently cancelled scheduled visits, four in the last year. AT 883; see also AT 888 (August 2020 initial evaluation noting that plaintiff no-showed to three scheduled initial visits). At that time, plaintiff was being treated for complex PTSD and ADHD. AT 883, 887. Dr. Correia noted that plaintiff's behavior and attitude were "variable and at times unpredictable" (AT 884) and that plaintiff's ability to adapt to work was "likely impaired" due to "impulsivity, rejection sensitivity, distress intolerance," and difficulty concentrating and completing tasks. AT 886.

In the September 2023 mental impairments questionnaire, Dr. Correia diagnosed complex PTSD and recurrent, moderate ADHD. AT 1088. Dr. Correia described her clinical findings, including results of the mental status examination, as follows: "Hyperarousal, frequent panic attacks, difficulty reacting adaptively to stressful events . . . [.]" AT 1088. Plaintiff's prognosis was "good." AT 1088. Dr. Correia identified multiple mental symptoms, including: decreased energy, feelings of guilt or worthlessness, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood and affect, and "recurrent severe panic attacks . . . occurring on the average of at least one a week." AT 1089.

11

On the checkbox form, Dr. Correia indicated that plaintiff could frequently understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.  AT 1090-1091.  Dr. Correia also opined that plaintiff would be absent from work more than four times a month due to mental symptoms.  AT 1091.

In the October 2023 update, Dr. Correia reassessed plaintiff's ability to concentrate, persist, or maintain pace.  She found that plaintiff could do so only occasionally, not frequently.  AT 1101.  Her other findings remained the same, including the opinion that plaintiff would be absent from work more than four times a month due to mental symptoms.  AT 1102.

The ALJ did not find these opinions persuasive, calling them "vague" and "not consistent with the evidence."  AT 112.  The ALJ explained, in part:

> Attention and concentration were intact for the purposes of the [August 2023] evaluation.[5]  Even at the claimant's initial evaluation with Dr. Correia [in 2020], the claimant had normal mental status notes other than mood and affect.[6]  This included intact attention and concentration and ability to recall recent and remote events.  These notes are not consistent with the claimant only being able to occasionally concentrate, persist, and maintain pace.  . . . [T]he evidence does not show more than mild and moderate impairments . . . Absenteeism is not consistent with Dr. Correia's treatment notes being fairly static.

AT 117 (emphasis added).

The ALJ did not cite any evidence that undercut Dr. Correia's opinion that plaintiff would be absent more than four times a month due to mental symptoms.  Nor did the ALJ address evidence that arguably supported this opinion, including Dr. Correia's notes that plaintiff frequently missed or cancelled scheduled appointments and her finding that plaintiff had recurrent severe panic attacks.  In assessing Dr. Galang's opinion, the ALJ reasoned that "consistently normal examinations are not consistent with bad days that would cause absenteeism" (AT 116); however, Dr. Correia's mental evaluations went beyond status examinations and included

---

[5] Citing AT 1077-1080 (August 2023 exam report by Dr. Correia noting that "[a]ttention and concentration are intact for the purposes of this evaluation.").

[6] See AT 895 (August 2020 initial report noting "[a]ttention and concentration are intact for purposes of participating in this evaluation.").

12

findings of impulsivity, stress intolerance, panic attacks, and other issues that could lead to frequent absences from work. See Hampton v. Colvin, 149 F.Supp.3d. 1279, 1283 (W.D. Wash. Feb. 25, 2016) (ALJ failed to give specific and legitimate reason supported by substantial evidence for discounting medical opinion that claimant would have "difficulty keeping [a] work schedule" without interruptions from her symptoms); Chang v. Astrue, 2010 WL 3186908, *7 (E.D. Cal. Aug. 11, 2010) (ALJ did not give clear and convincing reason to reject medical opinion that claimant's impairments were likely to produce "good days" and "bad days" resulting in four absences per month).

Here, the ALJ erred in failing to apply the supportability and/or consistency factors to Dr. Correia's opinion with respect to mental impairment-related absences. Because the VE testified that "employers tolerate on average one absence per month," the error affected the ultimate disability determination and is not harmless. See Hampton, 149 F.Supp.3d at 1284 (same). Plaintiff is entitled to summary judgment on this claim.[7]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d

---

[7] The court does not reach the remaining issues.

13

403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is DENIED;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated:  February 9, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/nune3141.dib.ckd